**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

KIM EVANS,  )
  )
      Petitioner,  )
  )  Case No. 14 C 0262
    v.  )
  )
UNITED STATES OF AMERICA,  )
  )
      Respondent.  )

### MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Kim Evans' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Evans' Section 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).[1]

### PROCEDURAL BACKGROUND

On July 21, 2009, a grand jury returned a Superseding Indictment charging Evans and his co-defendants with a February 20, 2009 bank robbery of Fifth Third Bank in Evanston, Illinois in violation of 18 U.S.C. § 2113(a) (Count One) and with knowingly possessing a firearm in furtherance of and using, carrying, and brandishing a firearm in relation to a crime of violence, namely, the February 20, 2009 bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). Also, the Superseding Indictment charged Evans with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count Three).

---

[1] Evans' reply brief was due on or before May 5, 2014. To date, Evans has failed to file his reply brief or a motion to extend the reply brief deadline.

After a three-day trial, a jury convicted Evans of all three counts of the Superseding Indictment on June 17, 2010. On June 9, 2011, the Court sentenced Evans to 444 months imprisonment — 240 months on Count One, 84 months on Count Two, and 120 months on Count Three.

Evans and his co-defendant Corley Smith appealed their convictions. Evans, however, did not appeal his sentence. On October 26, 2012, the United States Court of Appeals for the Seventh Circuit affirmed Evans' conviction. Evans filed the present pro se Section 2255 motion on January 14, 2014. Evans' Section 2255 motion is timely under 28 U.S.C. § 2255(f)(1).

## FACTUAL BACKGROUND

Evans and Smith pleaded not guilty, but their co-defendant Dezmond Swanson pleaded guilty, and agreed to cooperate with the government. As part of his agreement, Swanson testified at the trial. The government also introduced video and still images of the bank robbery, as well as the testimony of two bank tellers, who were present during the violent robbery. In addition, several expert witnesses and Federal Bureau of Investigation ("FBI") agents testified at trial.

Specifically, Swanson testified that on the afternoon of February 20, 2009, Evans approached him near 73rd and May Streets in Chicago and asked him if he wanted to make some money. After Swanson agreed, Evans and Swanson got into a green Cadillac that Evans was driving. At that time, Smith was already in the front passenger seat. Evans told Swanson that they were going to rob a bank and that Swanson would stand guard.

At about 4:00 p.m. on that same day, Swanson, Evans, and Smith arrived at the Fifth Third Bank at 2550 Main Street in Evanston, after which they put on gloves and masks and

entered the bank. Evans entered first with a gun drawn and vaulted over the counter. Smith also vaulted over the counter, leaving a shoe print on a piece of paper that the government later introduced into evidence. Swanson stood guard near the door. During the robbery, Evans and Smith yelled at the bank employees saying "someone's gonna die today." Although no one was killed, Evans struck a teller in the head with the butt of the gun. Further, Evans and Smith stuffed the money into a briefcase that Evans was carrying. After Evans, Smith, and Swanson left the bank, a dye pack hidden inside some of the money exploded and the briefcase started to smoke. Evans threw the briefcase with the money on the ground in an alley. Evanston Police Department's Evidence Technician Tim Messing later recovered the briefcase and also testified at trial. Meanwhile, Evans, Smith, and Swanson then fled in the green Cadillac returning to 73rd and May Streets. At some point, Evans stopped the car and put the gun into the trunk.

The government also called FBI special agents as trial witnesses. The agents' testimony established that prior to the bank robbery, they were conducting surveillance in the area of 73rd and May and had been following the green Cadillac. The FBI agents had been watching the Cadillac because on February 16, 2009, two Chicago suburban banks had been robbed and in the early morning of February 20, 2009, an informant had told the FBI that the perpetrators of the February 16, 2009 robberies intended to rob a bank later that day. The FBI agent who received this information had worked with the informant in the past and testified that the informant was reliable.

Based on the informant's statements, the FBI had held a briefing at 10:00 a.m. on February 20, 2009. FBI Agents Timothy Bacha, Craig Heidenreich, and James Stover, along with other FBI agents and task force officers, attended. At the briefing, an agent identified a

3

black male named "Kim" as the leader of a group involved in the February 16, 2009 suburban bank robberies. The agent also explained that some of the other suspects resided in the area of 73rd and May Streets in Chicago. After this initial briefing, the officers learned that Evans, who was on home confinement, had recently cut off his electronic monitoring bracelet. Also, the agents learned that the two other males involved with Evans in the earlier bank robberies were standing on the street near 73rd and May and that Evans would be arriving there in a green Cadillac to pick them up.

Trial testimony further established that by 11:30 a.m., FBI Agents Bacha and Stover, as well as several other agents, were in vehicles surveilling the 7300 block of May in Chicago. Around noon, Agents Bacha and Stover observed a two-door green Cadillac in that area. Over the next two hours, Agents Bacha and Stover observed the Cadillac traveling to various locations in the area of 73rd and May with several individuals getting in and out of the Cadillac.

Around 2:15 p.m., FBI agents were unable to locate the Cadillac in the vicinity of 73rd and May. Between 4:15 and 4:30 p.m., FBI Agents Bacha and Stover, who had remained in the area of 73rd and May looking for the Cadillac, received information that three men had robbed the Evanston Fifth Third bank at about 4:00 p.m. Based on their familiarity with the Chicago area, the agents knew that it was possible to travel from the area where they had last seen the green Cadillac at 2:15 p.m. to Evanston within an hour and a half.

Just before 5:00 p.m., an FBI agent emailed Agents Stover and Heidenreich regarding the Fifth Third Bank robbery. The email included an update explaining that "per bank staff identification" there were at least three black male suspects, all five feet, nine inches tall, and thin. The update also provided a description of the clothing worn by the suspects, including that

4

one suspect was wearing black jeans, black shoes, a green sleeveless jacket, a black hoodie, and black gloves. The email further stated: "All subjects considered armed and dangerous."

At about 6:00 p.m., surveillance agents saw the green Cadillac return to the area of 73rd and May. The agents then saw a man, later identified as Evans, pull the Cadillac into a street parking spot and stop. Another man, later identified as Smith, got out of the Cadillac. Surveillance agents then approached and identified themselves as law enforcement agents, which prompted Evans to drive off at a high speed with Swanson still in the car. While fleeing, Evans collided into an oncoming FBI vehicle that had its police lights activated. Thereafter, Evans got out of the Cadillac and fled on foot. Officers later apprehended Evans. After confirming that the individuals in the Cadillac matched the suspects' descriptions and clothing, the officers searched the Cadillac. They recovered a gun similar to the one used in the robbery, as well as clothing, black face masks, black stocking hats, and multiple sets of gloves. Officials then towed and searched the Cadillac.

## LEGAL STANDARD

"[R]elief under § 2255 is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). More specifically, under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). Accordingly, a Section 2255 motion is not a substitute for a direct

5

criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under 2255 "will not be allowed to do service for an appeal"). If a Section 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Sandoval v. United States,* 574 F.3d 847, 850-51 (7th Cir. 2009), or that enforcing the procedural default would lead to a "fundamental miscarriage of justice." *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir. 2012). Because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a Section 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Flores,* 739 F.3d 337, 341 (7th Cir. 2014).

## ANALYSIS

Construing his pro se Section 2255 motion liberally, *see McDowell v. Lemke,* 737 F.3d 476, 482 (7th Cir. 2013), Evans maintains that his trial counsel was constitutionally ineffective for: (1) failing to request a jury finding under *Alleyne v. United States,* ––– U.S. –––, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013); (2) failing to challenge his right to a speedy trial; (3) rejecting a plea offer that would have resulted in a less severe sentence; (4) failing to challenge his career offender status because his prior drug convictions should have counted as one sentence under U.S.S.G. § 4A1.2(a)(2); and (5) failing to object to his career offender status because his armed violence conviction was not a crime of violence under U.S.S.G. § 4B1.2(a). The Court addresses each argument in turn.

**I.     Ineffective Assistance of Trial Counsel Claims**

To establish constitutionally ineffective assistance of trial counsel, Evans must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Blake v. United States,* 723 F.3d 870, 879 (7th Cir. 2013). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States,* 648 F.3d 524, 527-28 (7th Cir. 2011). To establish prejudice, Evans must "show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable." *Blake,* 723 F.3d at 879. If Evans is unable to make a sufficient showing on one of the *Strickland* prongs, the Court need not consider the other. *See Strickland,* 466 U.S. at 697; *Morgan v. Hardy,* 662 F.3d 790, 802 (7th Cir. 2011).

**A.     Jury Finding under *Alleyne***

Evans first argues that his trial counsel was constitutionally ineffective for failing to request a jury finding under *Alleyne v. United States,* ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). "Overruling its decision in *Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), the Supreme Court held in *Alleyne* that any fact that increases a mandatory minimum sentence, other that the fact of a prior conviction, 'is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *United States v. Cureton,* 739

F.3d 1032, 1045-46 (7th Cir. 2014) (citation omitted).

Evans does not identify what fact was an element of his offense that the jury did not consider. This failure, however, is insignificant because the Court sentenced Evans on June 9, 2011, prior to the June 17, 2013 *Alleyne* decision, and the Seventh Circuit has concluded that *Alleyne* is not retroactive. *See Simpson v. United States,* 721 F.3d 875, 876 (7th Cir. 2013). Therefore, Evans' first ineffective assistance of counsel claim fails.

B.   **Right to Speedy Trial**

Next, Evans claims that his trial counsel was constitutionally ineffective for failing to challenge his right to a speedy trial. The Speedy Trial Act "provides that a defendant must go to trial within 70 days of either the date of the issuance of an indictment or a defendant's first appearance before a judicial officer, whichever is later." *Blake,* 723 F.3d at 884 (citing 18 U.S.C. § 3161(c)(1)). As the Seventh Circuit further explains:

> There is a series of statutorily permitted exclusions from the running of the 70-day clock which reflect Congress's understanding that a certain amount of scheduling flexibility is required by the courts in order to properly, fairly, and efficiently conduct and complete pretrial preparations. *See* [18 U.S.C.] § 3161(h)(1)-(8). Periods of exclusion include "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to ... delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion...."

*Blake,* 723 F.3d at 884 (quoting 18 U.S.C. § 3161(h)(1)(D)).

The docket reflects that the Court arraigned Evans on April 28, 2009 and that his jury trial began on June 14, 2010. The time that elapsed between Evans' arraignment and the start of his trial totaled 412 days, all of which were excludable under the Speedy Trial Act. The exclusion of time was based in part to Evans' pre-trial motions, including a motion to suppress that required a hearing, and Evans does not specifically dispute any particular exclusion in the

8

present Section 2255 motion. Furthermore, the Court articulated the reasons for excluding time — without Evans' objection — on the record during his court appearances.

Moreover, despite Evans' argument to the contrary, the Supreme Court's decision in *Bloate v. United States,* 559 U.S. 196, 215, 130 S.Ct. 1345, 176 L.Ed.2d 54 (2010), holding that time for the preparation of pre-trial motions is not automatically excluded, does not affect the Court's analysis because at the time of his pre-trial motions, the time required to prepare any such motions was automatically excludable. *See Blake,* 723 F.3d at 886 n.15. Further, the Court made factual findings under 18 U.S.C. § 3161(h)(7)(A),(B) for the Speedy Trial Act continuances that occurred after the Supreme Court decided *Bloate* on March 8, 2010. *See United States v. Parker,* 716 F.3d 999, 1006 (7th Cir. 2013). Because Evans cannot establish that there was a Speedy Trial Act violation in the first instance, his second ineffective assistance of counsel claim is factually baseless and without merit.

### C. Rejection of Plea Offer

Evans further argues that his trial counsel was constitutionally ineffective because counsel rejected a plea offer made by the government. *See Lafler v. Cooper,* ––– U.S. –––, 132 S.Ct. 1376, 1387, 182 L.Ed.2d 398 (2012) ("[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it"), and *Missouri v. Frye*, ––– U.S. –––, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012) (defense counsel have duty "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). In short, in *Lafler* and *Frye* the Supreme Court held in "that lawyers must tell their clients about offers of plea bargains." *Estremera v. United States,* 724 F.3d 773, 778 (7th Cir. 2013).

9

Here, the government did not make a formal plea offer to Evans, therefore, there was nothing for his trial counsel to communicate. In addition, Evans never expressed to the Court a desire or willingness to plead guilty. Again, Evans brings an ineffective assistance of counsel claim that is not based on the facts or circumstances of his case. Accordingly, Evans cannot show that his counsel's performance was deficient or that he was prejudiced by counsel's failure to discuss the non-existent plea agreement. *See Strickland,* 466 U.S. at 688, 694.

### D. Career Offender Status

Last, Evans argues that his trial counsel was constitutionally ineffective in violation of the Sixth Amendment because counsel failed to challenge Evans' status as a career offender. Under U.S.S.G. § 4B1.1(a):

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Evans' Presentence Investigative Report ("PSR") indicates that the probation office relied on three prior state felony convictions — one crime of violence and two controlled substance offenses — to establish his career offender status.

Nevertheless, Evans maintains that his two prior 1990 Circuit Court of Cook County convictions for possession of cocaine with intent to deliver should count as one sentence because the state court sentenced him on both counts on the same day and he served these sentences concurrently. The PSR, however, indicates that the probation office relied on two prior drug convictions that were charged in two separate indictments based on different sets of facts. (*See* 09 CR 1520-1, R. 260, citing 90 CR 0352701, 90 CR 0352001.) Because these two offenses

10

were separated by an intervening arrest and were not based on the same offense conduct, the probation office's recommendation that the two prior sentences count separately is appropriate pursuant to U.S.S.G. § 4A1.2(a)(2) ("Prior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest"). Therefore, Evans cannot establish that his counsel's performance was deficient because it is well-established that counsel cannot be constitutionally ineffective under the Sixth Amendment for failing to raise meritless claims. *See Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Warren v. Baenen,* 712 F.3d 1090, 1105 (7th Cir. 2013).

Furthermore, Evans argues that his trial counsel was constitutionally ineffective because counsel failed to argue that Evans' prior conviction for armed violence in Cook County case number 90 CR 1983702 was not a crime of violence pursuant to U.S.S.G. § 4B1.2. Section 4B1.2(a) specifically states:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Federal courts "apply a categorical approach in determining if a prior conviction is a crime of violence, focusing 'not on the facts of the defendant's particular crime, but only on the fact of conviction and the essential elements of the offense.'" *United States v. Johnson*, 680 F.3d 966, 983 (7th Cir. 2012) (citation omitted); *see also Descamps v. United States*, ––– U.S. –––, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). In Illinois, the armed violence statute states in relevant

part: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." *See* 720 ILCS 5/22A-2. On the face of this statute, Evans' conviction for armed violence is a crime of violence due to the essential elements of being armed with a dangerous weapon and committing a felony. Because Evans' armed violence conviction qualifies as a crime of violence under U.S.S.G. § 4B1.2, counsel's failure to object to the armed violence conviction as a basis for the career offender enhancement does not amount to ineffective assistance of counsel.

Moreover, in light of counsel's various objections and arguments made at sentencing, including mitigating factors pursuant to 18 U.S.C. § 3553(a), trial counsel's performance at sentencing — viewed as a whole — was not constitutionally deficient. *See Atkins v. Zenk,* 667 F.3d 939, 945 (7th Cir. 2012).

## II.  Evidentiary Hearing

Because the motion, files, and records of this case conclusively show that Evans is not entitled to any relief under Section 2255, the Court need not hold an evidentiary hearing under the circumstances. *See Yu Tian Li,* 648 F.3d at 532; *Koons v. United States,* 639 F.3d 348, 354-55 (7th Cir. 2011); 28 U.S.C. § 2255(b).

## III.  Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Therefore, the Court must determine whether to grant Evans a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present Memorandum, Opinion, and Order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649

12

n.5, 181 L.Ed.2d 619 (2012).

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his Section 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Fleming,* 676 F.3d at 625. Under this standard, Evans must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Evans has not established that jurists of reason would debate that the Court should have resolved his Section 2255 motion differently. As such, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** May 19, 2014

                                        **ENTERED**

                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**